J-S06018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: H.C.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1323 WDA 2024 |

Appeal from the Order Entered September 27, 2024
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  17 O.A. 2024

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:　　　　　　　　　**FILED: May 13, 2025**

T.K. ("Mother") appeals from the order granting the petition filed by J.A. ("Father") and his fiancé, A.W. (collectively, "Appellees") to involuntarily terminate Mother's parental rights to her son, H.C.A. ("Child").  After careful review, we affirm.

We glean the following relevant factual and procedural history from the certified record.  Mother and Father were never married but were in a relationship for approximately ten years, beginning in 2010.  ***See*** N.T., 7/8/24, at 16, 53.  Mother and Father share a daughter, E.A., who was born in January 2011.  ***See*** Appellees' Exhibit A.  In February 2015, Mother gave birth to Child.  ***See*** N.T., 7/8/24, at 8.  In addition, Mother has five other children from different fathers.  ***See*** Appellees' Exhibit A.  Mother and Father resided together at Father's residence in Greene County, Pennsylvania, where Father has resided for over ten years.  ***See id***. at 51.  In late 2019 or early

2020, Mother and Father ended their relationship, and Mother moved to West Virginia with Child and E.A. *See* N.T., 7/8/24, at 16, 54, 76. Following Mother's relocation, Father saw Child on the weekends. *See id*. at 41-42, 54-55. Meanwhile, Father and A.W. began their relationship in August 2020. *See id*. at 11. In October 2020, A.W. moved into Father's home in Greene County. *See id*. at 31. Appellees are not married, but are scheduled to be wed on August 14, 2025. *See id*. at 52. A.W. has two minor children from a former relationship who also live with Appellees, and A.W.'s son is the same age as Child. *See id*. at 31, 33-34.

In February 2021, the child welfare agency in Monongalia County, West Virginia received a referral regarding Mother, the specifics of which are not included in the record, resulting in the removal of all children in Mother's care pursuant to dependency proceedings. *See id*. at 58. Child has resided with Appellees since February 2021. *See id*. at 8. According to Father, Mother is a drug addict, struggles with her mental health, and, in this particular instance, left Child in a cold car from 2:00 a.m. to 6:00 a.m. *See id*. at 5, 8, 28-29. Mother averred that she was required to submit to drug screens and complete a parenting course. *See id*. at 59. Ultimately, due to Mother's compliance, the circuit court of West Virignia dismissed the matter against Mother on July 5, 2022, but placed "full legal and physical custody" of Child and E.A. with Father. *See* Appellees' Exhibit A. As best we can discern from the certified record, E.A. remained with Father until 2024, when Father

acquiesced to E.A.'s desire to reside with Mother in exchange for the dismissal of a PFA petition against Father relating to E.A. **See** N.T, 7/8/24, at 5, 15, 20-22.

On May 13, 2024, Appellees filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938.[1] On May 22, 2024,

---

[1] A parent seeking to terminate the rights of the child's other parent must demonstrate that an adoption of the child is anticipated in order for the termination petition to be cognizable. **See In re Adoption of M.E.L.**, 298 A.3d 118, 121 (Pa. 2023) (citing 23 Pa.C.S.A. § 2512). Moreover, since a termination petition filed under these circumstances must occur in the context of an anticipated adoption, and because adoption is a statutory right, the parent seeking termination must strictly comply with all pertinent provisions of the Adoption Act for the adoption to be valid. **See id**. The provisions of the Adoption Act, however, make clear that a legal parent must relinquish his parental rights in order to consent to the adoption of his child by a non-spouse. **See id**. at 121-22; **see also** 23 Pa.C.S.A. § 2711(a)(3), (d)(1). There is a well-recognized exception to this requirement in the context of stepparent adoptions, such that a parent need not relinquish his parental rights when consenting to the adoption of his child by a spouse. **See id**. at 122; **see also** 23 Pa.C.S.A. § 2903. Additionally, petitioners also may seek relief from strict compliance for "cause shown" pursuant to 23 Pa.C.S.A. § 2901. **Id**. Here, although Appellees' termination petition included an averment that A.W. intended to adopt Child, the certified record indicates that Appellees were not married. **See** N.T., 7/8/24, at 52 (indicating only that Appellees planned to be married in August 2025). Furthermore, Father did not relinquish his parental rights to Child. Finally, Appellees did not raise the applicability of the exception clause at section 2901. These procedural defects raise significant concerns regarding the propriety of Appellees' termination petition. **See M.E.L.**, 298 A.3d at 129 (holding that termination petition filed by one biological parent and their unmarried partner was required to either abide by the Adoption Act's relinquishment requirement or adduce evidence demonstrating why the petitioners could not marry pursuant to section 2901). However, no party has challenged this procedural oversight in either the trial court or this Court. Our review of pertinent case law finds no suggestion that

*(Footnote Continued Next Page)*

the orphans' court appointed Benjamin Goodwin, Esquire, as both guardian *ad litem* ("GAL") and legal counsel for Child.[2]  On July 8, 2024, the orphans' court conducted a termination hearing on Appellees' petition, at which point Child was nine years old.  Appellees introduced the July 5, 2022 West Virginia order confirming their legal and physical custody of Child.  Appellees each testified that Child is loved and cared for, and is now thriving at their home.  Mother

_____

this Court is empowered to raise such a claim *sua sponte*.  **See In re Adoption of Z.S.H.G.**, 34 A.3d 1283, 1288 (Pa. Super. 2011) (observing that standing is no longer a jurisdictional prerequisite to termination proceedings and is subject to waiver).  Therefore, we do not address it.  **See In re Adoption of K.M.G.**, 240 A.3d 1218, 1228 (Pa. 2020) (holding that "appellate courts are limited to addressing issues raised by the parties, absent certain exceptions such as subject matter jurisdiction or where [the Pennsylvania Supreme Court] has specifically authorized review").  Based upon the foregoing, we urge the orphans' court to exercise caution and due diligence on such matters in future termination proceedings.

[2] Our Supreme Court has mandated that this Court conduct a *sua sponte* review to ensure that the orphans' court has properly appointed counsel to represent the legal interests of children in contested termination proceedings in conformity with 23 Pa.C.S.A. § 2313(a).  **See K.M.G.**, 240 A.3d at 1234-36.  When counsel is appointed to represent child's legal interests as well as child's best interests as guardian *ad litem* ("GAL"), this Court must also *sua sponte* review whether "the orphans' court determined that the child's best interests and legal interests did not conflict."  **Id**. at 1236 (observing that a single attorney cannot represent a child's best interests and legal interests if those interests conflict).  Upon review of the record, this Court concluded that the orphans' court appointed Attorney Goodwin to represent Child's best interests and legal interests without first determining whether these interests conflicted in contravention of **K.M.G.**  Accordingly, this Court remanded to the orphans' court with instructions to undertake such a determination and submit a supplemental opinion.  The orphans' court complied, and confirmed to this Court that no conflict existed between Child's best and legal interests.  **See** Supplemental Opinion, 4/1/25.  Thus, the orphans' court satisfied its mandate pursuant to section 2313(a) and **K.M.G.**.

testified on her own behalf and claimed, *inter alia*, that she had spoken to Child seven or eight times since 2022, and that she had bought clothes and school supplies for him which she gave to paternal grandmother to deliver to Child. ***See id***. at 65, 69. The orphans' court interviewed Child *in camera* with all counsel present. Child testified that, in the three years since he has been in Father's custody, he could only recall speaking to Mother on one occasion, via a video call. ***See*** N.T., 7/8/24, at 92-94. Child did not remember when that one conversation had taken place but thought it had been the prior year. ***See id***. at 94. Child could not remember the last time he had seen Mother. ***See id***. at 97. Child indicated that Mother has not bought any clothes for him, and explained that he was certain about this because Appellees take him shopping, and he gets to pick out all of his clothes. ***See id***. at 96. Child further testified that he would like A.W. to adopt him because she takes care of him. ***See id***. at 98-99.

On September 27, 2024, the orphans' court issued an order involuntarily terminating Mother's parental rights pursuant to section 2511(a)(1) and (b).[3] Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The

_____

[3] In its opinion accompanying the subject order, the orphans' court stated that Appellees sought to involuntarily terminate Mother's parental rights pursuant to section 2511(a)(1), (2), (5), and (b). However, upon review of the petition, Appellees only asserted grounds for termination under section 2511(a)(1) and (b). ***See*** Petition, 5/13/24.

orphans' court thereafter filed a statement pursuant to Rule 1925(a) referring this Court to its factual findings and conclusions of law provided in the September 27, 2024 order.

Mother raises the following issue for our review: "Was clear and convincing evidence presented to show that termination was warranted pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b)?" Mother's Brief at 2 (unnecessary capitalization omitted).[4]

Our standard of review of an order involuntarily terminating parental rights is well-established:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

---

[4] We note with displeasure that Attorney Goodwin did not file a participant's brief. However, at the conclusion of the hearing on July 8, 2024, Attorney Goodwin indicated his support for the involuntary termination of Mother's parental rights. *See* N.T., 7/8/24, at 106-08.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct in section 2511(a) that may warrant termination. *See id*. at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the trial court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b).

Our analysis in this case will focus upon section 2511(a)(1) and (b), which provide as follows:

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the

- 7 -

petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

In order to establish grounds for termination pursuant to section 2511(a)(1), "[a] petitioner. . . must demonstrate by competent, clear and convincing evidence, '[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.'" *In re Adoption of C.M.*, 255 A.3d 343, 363-64 (Pa. 2021); *see also* 23 Pa.C.S.A. § 2511(a)(1).

As our Supreme Court has explained:

Though we do not adhere to any strict definition of "parental duty," a child has a right to essential parental care, and our jurisprudence reveals certain irreducible qualities of a parent's attendant obligation. Foremost, it is a positive duty requiring affirmative performance. "'[C]ommunication and association are essential to the performance of parental duty[.]'" "'[P]arental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.'" A parent must "'exercise

reasonable firmness'" in resisting obstacles placed in the path of maintaining the parent-child relationship, or his "'rights may be forfeited.'" "'Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.'"

***C.M.***, 255 A.3d at 364 (citations omitted); ***see also In re Adoption of L.A.K.***, 265 A.3d 580, 592 (Pa. 2021) (explaining that parental duties in relation to the needs of a child include love, protection, guidance, support, communication, and association).

In assessing section 2511(a)(1), trial courts should consider the entire history of the case and avoid applying the statutory six-month requirement mechanically. ***See C.M.***, 255 A.3d at 364. However, the General Assembly's emphasis on the six months immediately preceding the filing of the termination petition indicates this timeframe is the "most critical period for evaluation" of a parent's conduct. ***L.A.K.***, 265 A.3d at 592.

"When considering a request to terminate parental rights under section 2511(a)(1), a parent's failure or refusal to perform parental duties 'must be analyzed in relation to the particular circumstances of the case.'" ***Id***. (*citing **In re Burns***, 379 A.2d 535, 540 (Pa. 1977)). Thus, "even where the evidence clearly establishes a parent has failed to perform affirmative parental duties for a period in excess of six months . . ., the court 'must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination [of parental rights].'" ***Id***. at 593 (internal citation

- 9 -

and quotation marks omitted). The totality of the circumstances includes consideration of the following: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to [s]ection 2511(b)." *Id*.

A finding that a parent has refused or failed to perform parental duties "will not be predicated upon parental conduct which is reasonably explained or which resulted from circumstances beyond the parent's control," but may "only result when a parent has failed to utilize all available resources to preserve the parental relationship." *Id*. at 592 (*citing* **Burns**, 379 A.2d at 540). A parent "must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." ***In the Interest of K.M.W.***, 238 A.3d 465, 474 (Pa. Super. 2020) (citation and quotation marks omitted).

Regarding section 2511(a)(1), Mother contends that Appellees failed to prove by clear and convincing evidence that her actions evidenced a settled purpose of relinquishing her parental claim to Child or that she has refused or failed to perform parental duties. **See** Mother's Brief at 7. Essentially, Mother argues that once Child was placed with Father, he prevented Mother from communicating with Child by changing phone numbers, blocking her email communications, and intimidating Mother with threats of violence if she made

- 10 -

any attempt to physically visit with Child. *See id*. at 8. Mother claims that she was forced to communicated with A.W. to access information about Child. *See id*. Mother also claims that she communicated with Child when she spoke with E.A., and that Child told her he wanted to visit her on weekends. *See id*. Finally, Mother asserts that she provided financial support for Child when she bought him school supplies and clothes and had them delivered by paternal grandmother. *See id*.

In concluding that Appellees satisfied section 2511(a)(1), the orphans' court made the following factual findings:

4. Mother has not had any form of custody since June of 2022.

* * * *

6. [T]he West Virginia Circuit Court entered an order on July 5, 2022, granting full legal and physical custody of Child to Father.

7. Although Mother's involvement in the life of Child prior to this date is relevant, this court focused on the period after July 5, 2022.

* * * *

10. Mother mainly blames Father for her lack of involvement in the life of Child. She blames him for blocking her access and ability to see Child.

* * * *

12. Mother indicates she has spoken with Child seven or eight times over the last two years via [video calls]. The court believes this is an exaggeration, but also believes there was some contact.

- 11 -

13. Father has lived at the same address at least since July of 2022 and Mother was aware of and familiar with the address.

14. Mother's last physical visit with Child was prior to July of 2022 and likely in 2021.

15. Mother often would message at Christmas and on birthdays although these messages were mainly directed to [A.W.]. Mother sent almost no gifts, cards, *etc.*, and offered no financial support beyond a few clothing items.

16. Child recalled only a single Facetime conversation with Mother. This conversation was facilitated and encouraged by [E.A.].

17. Mother states she was blocked from seeing Child by Father. This was somewhat credible. Father certainly did not encourage contact between Mother and Child.

18. There was no credible evidence presented to indicate that Child is bonded with Mother. There was likely a bond at some point, but any current bond is all but non-existent.

19. Mother has not filed any actions in an attempt to see Child. Mother's interest in Child has been passive. She has taken no affirmative steps towards exercising her parental duties.

20. Mother, by her conduct and non-conduct, has evidenced a settled purpose to relinquish parental claim to Child, and has refused or failed to perform her parental duties for at least the last twenty-two months preceding the hearing.

Orphans' Court Order, 9/27/24, at unnumbered 1-4 (unnecessary capitalization omitted).

Based on our review, we conclude that the record supports the orphans' court's findings. Importantly, we note that Mother does not indicate anywhere in her appellate brief what efforts she made to assert her parental rights to Child in the critical six-month period prior to the filing of the termination

- 12 -

petition on May 13, 2024. Instead, Mother makes general assertions of her actions taken in the three-year period after Child was removed from her custody in February 2021, without specifying when such actions occurred. Thus, on the record before us, Mother has pointed to no evidence of record, nor presented any argument to this Court that she performed any parental duties in the critical six-month period applicable to a section 2511(a)(1) analysis.

Moreover, Mother confirmed that she has not had physical contact with Child since May 2021. *See* N.T., 7/8/24, at 74. Mother acknowledged that she knows where Child lives because she had lived there with Father for many years. *See id*. at 80. While Mother testified that she spoke with Child seven or eight times since Child was removed from her care, the orphans' court believed this was an exaggeration given that Child only recalled a single communication with Mother. *See id*. 63-64, 69, 92-94. Again, we emphasize that Mother did not testify that any of these purported conversations with Child occurred in the six months prior to the filing of the termination petition on May 13, 2024. Indeed, Child thought that the sole conversation he recalled having with Mother was in the prior year. *See id*. at 94.

Further, the record reflects that Father testified that he has not spoken to Mother since October 2020. *See id*. at 10. Although Father admitted to blocking communications from Mother to prevent harassment, Mother did not exercise reasonable firmness in maintaining a parental relationship with

Child.[5] *See K.M.W.*, 238 A.3d at 474. Mother claimed that she attempted to file "an amendment" to the custody order issued in the West Virginia dependency proceedings, but was told that she needed to file an action seeking visitation in Greene County, Pennsylvania, since the West Virginia dependency proceeding had been closed since 2022. *See id*. at 79. Mother conceded that she took no steps to initiate custody proceedings in Pennsylvania. *See id*. at 80, 84.

In addition, A.W. testified that Mother messaged her on various occasions but never requested to visit with Child. *See id*. at 37-38, 40. Notably, Appellees were not aware of any clothing, gifts, or school supplies that Mother claimed she had provided for Child. *See id*. at 23, 38-39. Moreover, Child was adamant that Mother had not provided clothes for him, and that he had not received any clothing for which he was unaware of the source. *See id*. at 96. Instead, Child maintained that Appellees take him shopping and that he gets to pick out all of his clothing. *See id*.

Notably, for each of her various assertions, Mother provided no evidence to the orphans' court to substantiate her claimed efforts. For example, Mother provided no receipts or other documentation to support her claim that she had

_____

[5] To the extent Mother argues that Father threatened violence if Mother attempted to visit Child, we find her argument unavailing. Mother testified that Father's alleged violent threats occurred in 2019, when their relationship was ending, years prior to Father obtaining custody of Child. *See* N.T., 7/8/24, at 81-82.

purchased clothing and school supplies for Child. Mother did not present the testimony of paternal grandmother to support her claim that she gave paternal grandmother clothing and school supplies to deliver to Child. Mother produced no copies of emails that she claimed to have sent to Father asking to see Child. Mother produced no copies of correspondence she claimed to have sent to the West Virginia court in the closed dependency matter seeking visitation.

Based on the foregoing, the record supports the orphans' court's determination that Mother failed to perform her parental duties for a period in excess of six months prior to the filing of the termination petition as required by section 2511(a)(1). As Child's biological parent, Mother had a positive duty requiring affirmative performance. *See C.M.*, 255 A.3d at 364. Her parental duty required her to exert herself to take and maintain a place of importance in Child's life. *See id*. Mother did not do so. Instead, Mother's contentions amount to a mere passive and minimal effort to maintain a peripheral position in Child's life while Appellees provided for Child and met all of his physical and emotional needs. *See id*. The certified record additionally evinces that Mother failed to exercise reasonable firmness in resisting obstacles placed in her path of maintaining the parent-child relationship. *See K.M.W.*, 238 A.3d at 474. Therefore, upon consideration of the totality of the circumstances, we discern no error of law or abuse of discretion by the orphans' court in determining that Appellees satisfied their burden of establishing termination under section 2511(a)(1).

We now turn to Mother's challenge to the trial court's ruling regarding section 2511(b). When the trial court concludes that adequate grounds for termination exist pursuant to section 2511(a), the court then turns to section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a section 2511(b) inquiry must include consideration for the bond between the parent and the child. *In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Additionally, "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). "However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (*citing In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008)).

Our Supreme Court has recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the [s]ection 2511(b) analysis." *K.T.*, 296 A.3d at 1109. We will not disturb a trial court's section 2511(b) assessment if the factual findings are supported by the record. *M.E.*, 283 A.3d at 839.

Regarding section 2511(b), Mother contends that Appellees did not present "evidence that [Child's] developmental, physical, and emotional needs and welfare would be negatively impacted if the mother-child relationship would be left unsevered." Mother's Brief at 10.

Initially, we observe that Mother's argument is legally unsound. Section 2511(b) and our case law require trial courts to examine the effect on the child of severing a parental bond, and this includes "a determination of whether the bond is **necessary and beneficial** to the child, *i.e.*, whether maintaining the bond **serves the child's developmental, physical, and emotional needs and welfare**." **K.T.**, 296 A.3d 1113 (emphasis added). Accordingly, to the extent that Mother contends that Child will not be "negatively impacted" if her alleged bond with Child is not severed, her argument does not address the applicable legal standards for a section 2511(b) analysis.

In this regard, the orphans' court issued the following findings pursuant to section 2511(b):

> The best interest of Child is clearly to remain in his current home and be raised by his Father and [A.W.], outside the care of Mother. This provides a permanency that Child deserves and provides a stability and consistency that Mother has not been able to provide, and has in fact forfeited. In addition, Child has little to no bond to Mother.

Orphans' Court Order, 9/27/24, at unnumbered 7.

Based on our review, we discern no abuse of discretion or error of law by the trial court in reaching its determination regarding section 2511(b). As

detailed above, Mother had no physical contact whatsoever, and only minimal verbal contact with Child for more than two years prior to the termination proceeding. Mother baldly asserted that Child wants to spend weekends with her, but when interviewed *in camera*, Child stated his desire to be adopted by A.W. because she takes care of him. **See** N.T., 7/8/24, at 98. Further, Child's guardian *ad litem*, Attorney Goodwin indicated that he had spoken with Child and that Child indicated that he "really doesn't have any desire to have any involvement with [M]other." **See id**. at 86.

Father testified that A.W. has been the sole "maternal figure" since Appellees obtained custody of Child. **See id**. at 12. Father attested that A.W. is a stay-at-home mom who cares for Child and performs all the parental duties while Father is at work. **See id**. at 14. A.W. confirmed the strong parent-child bond she shares with Child. **See id**. at 31-37, 39. She testified that she, *inter alia*, cleans, cooks, gets Child ready for school, and helps with his homework. **See id**. at 34. Thus, the record supports the orphans' court's finding that Child does not share a parent-child bond with Mother. **See id**. at 63-64, 69, 74, 92-94.

Based on the foregoing, the record evidence amply demonstrates that the termination of Mother's parental rights will serve the developmental, physical, and emotional needs and welfare of the Child. Therefore, we discern no abuse of discretion by the court in terminating Mother's parental rights pursuant to section 2511(b).

Accordingly, we affirm the order involuntarily terminating Mother's parental rights to Child pursuant to section 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

5/13/2025